IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| STEPHEN P. KELLY,<br><br>　　　Plaintiff,<br><br>v.<br><br>MYRTUE MEDICAL CENTER, ANN BUMAN, BARRY JACOBSEN, and DENISE SUEDKAMP,<br><br>　　　Defendants. | No. 1:23-cv-00007-RGE-SBJ<br><br>INITIAL REVIEW ORDER |

## I.   INTRODUCTION

Plaintiff Stephen P. Kelly brings a pro se action against Defendants Myrtue Medical Center, Ann Buman, Barry Jacobsen, and Denise Suedkamp. *See* ECF No. 1. Kelly moves to proceed in form pauperis. ECF No. 2. The Court now conducts its initial review of the case and concludes summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e)(2).

## II.   SUMMARY OF COMPLAINT

Construing Kelly's pro se complaint liberally, the Court sets forth the relevant facts as it understands them. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

In 2022, Kelly was "an active clinic medical patient" at Myrtue Medical Center. ECF No. 1 ¶ 21. "During the winter months of 2022," Kelly filed an administrative complaint with the Iowa Board of Medicine and a lawsuit in the United States District Court both against Myrtue Medical Center physician Dr. Adam Bendorf. *Id.* ¶ 19. He also filed an administrative complaint with the Iowa Board of Nursing "against his own medical provider," Suedkamp. *Id.* ¶ 22. Buman—Myrtue Medical Center's "risk and safety officer"—and Jacobsen—Myrtue Medical Center's chief executive officer—were notified of the complaints against Dr. Bendorf and

Suedkamp. *Id.* ¶¶ 20–21; *see also id.* ¶ 5. "Buman, Suedkamp, and Jacobsen, all Myrtue staffing personnel, revoked, and clearly terminated Kelly's patient status with the Myrtue medical clinic portion of the hospital." *Id.* ¶ 23.

### III.   LEGAL STANDARD

"The federal courts are courts of limited, not general, jurisdiction." *Thomas v. Basham*, 931 F.2d 521, 522 (8th Cir. 1991). Therefore, every "court has a special obligation to consider whether it has subject matter jurisdiction in every case." *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011). The Court will address jurisdictional issues sua sponte where the parties do not raise the issues. *Thomas*, 931 F.2d at 523. The Court must dismiss a case if it lacks jurisdiction to hear a claim. Fed. R. Civ. P. 12(b)(1), (h)(3).

A pro se complaint must be liberally construed. *See Haines*, 404 U.S. at 520–21. The Court must view all factual allegations in the light most favorable to Kelly unless the facts alleged are clearly baseless. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (reasoning a court ruling on an in forma pauperis complaint has discretion to assess what allegations are "clearly baseless").

Notwithstanding the liberal construction standard, Kelly's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Kelly must "nudge[ his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### IV.   DISCUSSION

#### A.   Subject Matter Jurisdiction

Kelly's complaint alleges the Court's jurisdiction under diversity jurisdiction. ECF

2

No. 1 ¶ 11. Kelly must therefore establish: 1) complete diversity of the parties; and 2) an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332. It is the plaintiff's burden to establish diversity of citizenship by a preponderance of the evidence. *See Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir.1997); *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir.1992). The Court must dismiss a case if it lacks jurisdiction to hear the claim. *See* Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(h)(3).

"The jurisdiction of a federal court under 28 U.S.C. § 1332(a) depends on the citizenship of the parties at the time the action is commenced." *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 714 F.3d 1055, 1056 (8th Cir. 2013) (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570–71 (2004)).

> Citizenship requires permanence. The Fourteenth Amendment establishes that U.S. citizens are "citizens ... of *the* State wherein they *reside*." U.S. Const. amend. XIV, § 1 (emphasis added). To "reside"—in contrast to the related and less precise word "resident"—means to "have one's *permanent home* in a particular place."[6] *New Oxford American Dictionary, supra,* 1485 (emphasis added); *see also, e.g., Merriam–Webster's Collegiate Dictionary* 1060 (11th ed.2007) (defining "reside" as "to dwell permanently or continuously: occupy a place as one's legal domicile"). The Fourteenth Amendment's reference to "the" singular "State" further demonstrates one may reside in, and thus be a citizen of, only one state. By contrast, one may be a resident of multiple states in addition to the state of citizenship. Because of this ambiguity in the word "resident"—as compared to "citizen" and the unambiguous "reside"—we cannot satisfy ourselves that diversity jurisdiction is proper based solely on an allegation a party is (or was) a "resident" of a particular state.

*Reece v. Bank of New York Mellon*, 760 F.3d 771, 778 (8th Cir. 2014) (citations omitted).

Kelly's complaint does not sufficiently allege diversity of citizenship. Although he sufficiently alleges the citizenship of Myrtue Medical Center and the individual Defendants, his allegation regarding his own citizenship is insufficient. *See* ECF No. 1 ¶¶ 11–16.

Kelly alleges he "is a citizen, and a resident of the diverse state of Nebraska." ECF No. 1 ¶ 12. He provides only a "General Delivery, U.S. Post Office, Grand Island, NE 68801" address

3

Case 1:23-cv-00007-RGE-SBJ   Document 3   Filed 05/01/23   Page 4 of 7

for himself which does not engender the required permanence. *Id.* at 1; *cf. Reece*, 760 F.3d at 778. Further, court records indicate Kelly's citizenship is decidedly transient and impermanent. In early 2022, Kelly claimed Iowa citizenship. *See* Compl. 1, *Kelly v. The President of the Corp. of the Church of Jesus Christ of Latter-Day Saints*, No. 1:22-cv-0001-RGE-SBJ (S.D. Iowa Jan. 6, 2022), ECF No. 1 (providing "General Delivery, U.S. Post Office, Harlan, IA 51537" address); Compl. ¶¶ 9–13, *Kelly v. Cox*, No. 1:22-cv-00013-RGE-SBJ (S.D. Iowa Aug. 8, 2022), ECF No. 1 (indicating Kelly was living in Iowa in April 2022). In August 2022, Kelly claimed Montana citizenship. *See* Compl. 1, *Kelly v. Cox*, No. 1:22-cv-00013 (Aug. 8, 2022), ECF No. 1 (providing "General Delivery, U.S. Post Office, Livingston, MT 59047" address). In October and November 2022, Kelly claimed Wyoming citizenship, apparently residing in two different Wyoming cities. Pl.'s Change of Address Notice, *Kelly v. Cox*, No. 1:22-cv-00013 (Oct. 17, 2022), ECF No. 3 (providing "General Delivery, U.S. Post Office, Cody, Wyoming 82414" address); Am. Compl. 1, *Kelly v. The President of the Corp. of the Church of Jesus Christ of Latter-Day Saints*, No. 1:22-cv-0001 (Nov. 23, 2022), ECF No. 4 (providing "General Delivery, U.S. Post Office, Powell, W.Y." address). On March 8, 2023, Kelly claimed Nebraska citizenship in his complaint for this matter. ECF No. 1 at 1. On March 14, 2023, Kelly re-claimed Iowa citizenship. *See* Compl. 1, *Kelly v. Southwest Iowa Trans. Entity*, No. 1:23-cv-0008-RGE-SBJ (S.D. Iowa March 14, 2023), ECF No. 1 (providing "General Delivery, U.S. Post Office, Harlan, Iowa 51537" address).

Accordingly, the Court finds Kelly has not met his burden to sufficiently allege a basis for the Court to exercise diversity jurisdiction over this matter.

  **B. Claims**

Notwithstanding the complaint's shortcomings as to diversity jurisdiction, the Court addresses each of Kelly's claims in turn.

4

1.       **Retaliation (Count 1)**

In Count 1, Kelly alleges Myrtue Medical Center and its staff unlawfully terminated its provider-patient relationship with Kelly in retaliation for Kelly filing administrative complaints with the Iowa Board of Medicine and Iowa Board of Nursing and a civil lawsuit against Dr. Bendorf. ECF No. 1 ¶ 32; *id.* ¶¶ 7–10, 19, 26. He asserts his claim is based on "[t]he state of Iowa, and the federal Whistleblowers Protection Act." *Id.* ¶ 25.

Iowa's whistleblower statute prohibits public employers from retaliating against employees who report information "evi[ncing] a violation of law or rule, mismanagement, a gross abuse of funds, an abuse of authority, or a substantial and specific danger to public health or safety." Iowa Code § 70A.28. The law applies to public employment. Kelly does not allege an employment relationship with any of the defendants. The Court is unaware of any other state whistleblower statute relevant to Kelly's claim.

Similarly, the Whistleblower Protection Act protects "any disclosure of information" by federal government employees which they "reasonably believe[] evidences an activity constituting a violation of law, rules, or regulations, or mismanagement, gross waste of funds, abuse of authority or a substantial and specific danger to public health and safety." 5 U.S.C § 2302(b)(8)(A). Again, the law applies to federal public employment. Kelly does not allege an employment relationship with any of the defendants. The Court is unaware of any other federal whistleblower statute relevant to Kelly's claim.

Because Kelly fails to allege a claim based on a recognized cause of action, the claim alleged in Count 1 must fail. The Court dismisses this claim with prejudice because amendment would be futile. *Cf. Moses.com Securities, Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) ("A district court may appropriately deny leave to amend where there are compelling reasons such as . . . futility of the amendment." (internal quotation marks and

citations omitted)). No cause of action exists pertaining to patient whistleblowers such that Kelly could successfully amend his complaint to state a claim for which relief may be granted.

### 2. Interference (Count 2)

In County 2, Kelly alleges Myrtue Medical Center and its staff "ha[ve] most unlawfully caused interference with [Kelly], in terminating any clinic medical services what so ever, over filing of the entitled governmental complaints without any imposed form of retaliation." ECF No. 1 ¶33.

This claim is a restatement of Kelly's whistleblower retaliation claim. *See supra* Part IV.B.1. As such, the Court finds Kelly fails to allege a claim based on a recognized cause of action. The Court dismisses the claim alleged in Count 2 with prejudice because amendment would be futile. *Cf. Moses.com Securities, Inc.*, 406 F.3d at 1065.

### 3. Modification of medical records (Count 3)

In Count 3, Kelly alleges Myrtue Medical Center and its staff "engaged in[] a dishonest and corrupt turn and twist of the true and actual events" by "enter[ing] into the hospital's official computer system, and . . . modif[ying] and re-fabricat[ing] official medical records." ECF No. 1 ¶ 34. Kelly claims Myrtue Medical Center and its staff's conduct "caus[ed] a false appearance upon this Plaintiff Kelly." *Id.*

No cause of action exists pertaining to the modification medical records. The Court finds Kelly fails to allege a claim based on a recognized cause of action. The Court dismisses the claim alleged in Count 3 with prejudice because amendment would be futile. *Cf. Moses.com Securities, Inc.*, 406 F.3d at 1065.

## V. CONCLUSION

For the forgoing reasons, Kelly fails to state claims for which relief may be granted.

**IT IS ORDERED** that Plaintiff Stephen P. Kelly's claims are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff Stephen P. Kelly's Motion for Leave to Proceed In Forma Pauperis, ECF No. 2, is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 1st day of May, 2023.

_____
REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE